**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:16-CR-212** |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **KEVIN COLES,** | : | |
| **TOREY WHITE,** | : | |
| **JERELL ADGEBESAN, and** | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM**

Defendants Kevin Coles, Torey White, and Jerell Adgebesan have filed

motions seeking to admit or exclude certain evidence at trial or, in the alternative,

to sever the trial of Coles and White from the trial of Adgebesan. The relief sought

has broadened through supplemental briefing: Coles, White, and Adgebesan now

request that we try all three defendants separately. For the reasons that follow, we

will grant defendants' requests for severance as to Adgebesan but deny them as to

Coles and White.

I.    **Factual Background & Procedural History**

The criminal investigation and charges in this case originate with a

triple homicide and robbery on June 25, 2016. The third superseding indictment

identifies the homicide victims as Wendy Chaney,[1] Phillip Jackson, and Brandon

Cole. The murders and robbery occurred in a barn on Jackson's farm, located

at 11026 Welsh Run Road in Mercersburg, Franklin County, Pennsylvania. The

---

[1] The third superseding indictment uses two different spellings for this
victim's last name, switching between "Chaney" and "Cheney." We use "Chaney"
in this memorandum, which we understand to be the correct spelling.

alleged events leading up to the triple homicide and robbery have been detailed in the court's prior opinions in this case and are incorporated herein by reference. We summarize below those allegations pertinent to the instant motions and those necessary for context.

### A.    **Factual Background**

According to the third superseding indictment, during the spring and summer of 2016, defendants Kevin Coles, Devin Dickerson, and Torey White were involved in distributing heroin, cocaine base, and cocaine hydrochloride in the Chambersburg and Mercersburg areas of Pennsylvania, as well as in Hagerstown, Maryland. (See Doc. 499 ¶ 5). Chaney and Jackson each had drug-trafficking and personal relationships with Coles, Dickerson, and White. (Id. ¶¶ 6-7, 12). When that trio began to suspect Chaney was cooperating with law enforcement in June 2016, they conspired with defendants Christopher Johnson, Jerell Adgebesan, Kenyatta Corbett, Michael Buck, Nicholas Preddy, Johnnie Jenkins-Armstrong, and other unindicted coconspirators to have her killed. (See id. ¶¶ 8-15; see also id. at 8-24, 30).

The indictment alleges defendants implemented their plan on June 25, 2016. Adgebesan and Corbett travelled from Hagerstown to Baltimore, where they recruited Johnson, Preddy, Jenkins-Armstrong, and others, all known members of the Black Guerilla Family gang, to plan Chaney's murder as well as a robbery of Jackson's farm. (See id. ¶ 10). That night, after a rendezvous at Buck's home in Hagerstown, Johnson, Adgebesan, Corbett, Preddy, Jenkins-Armstrong, and others drove to Jackson's farm where they encountered Jackson, Chaney, and Cole. (See

id. ¶¶ 13-14).  All three victims were subdued with their hands behind their backs using plastic zip ties before being shot in the head and back areas and set on fire. (See id. ¶¶ 14-15, 17).

The indictment also alleges that, in May 2017, Johnson and others began to suspect Adgebesan of cooperating with authorities regarding the triple homicide. (See id. ¶ 20).  To put an end to that cooperation, Johnson, Preddy, and Jenkins-Armstrong, along with defendants Terrance Lawson, Tyrone Armstrong, and another individual, "located and restrained" Adgebesan, intending to kill him.  (Id. ¶¶ 21-22; see id. at 37-41).  Against all odds, Adgebesan managed to escape unharmed.  (See id. ¶ 22).

## B.   **Procedural History**

A grand jury sitting in Harrisburg, Pennsylvania, returned a five-count indictment in August 2016 charging defendants Coles and Dickerson with various drug-trafficking and firearms offenses.  The grand jury has since returned three superseding indictments.  The first, returned April 12, 2018, added a sixth charge against Coles and Dickerson.  The grand jury then returned a second superseding indictment on December 20, 2018, adding 16 counts, including several capital charges, and nine new defendants: White, Johnson, Adgebesan, Corbett, Buck, Preddy, Jenkins-Armstrong, Lawson, and Armstrong.  On November 21, 2019, Johnson became the first defendant to plead guilty, enter a guilty plea to Counts One, Three, Four, Five, Six, Seven, Eight, Nine, Ten, and Twenty of the second superseding indictment.

The grand jury returned the currently operative third superseding indictment on January 29, 2020.  The third superseding indictment charged the ten defendants then remaining in 22 counts, as follows:

- Count One: conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) and Pinkerton v. United States, 328 U.S. 640 (1946), against Coles, Dickerson, White, Adgebesan, Corbett, Buck, Preddy, and Jenkins-Armstrong;

- Count Two: Hobbs Act robbery, and aiding and abetting same, in violation of 18 U.S.C. § 1951(a) and 18 U.S.C. § 2, against Coles, Dickerson, White, Adgebesan, Corbett, Buck, Preddy, and Jenkins-Armstrong;

- Counts Three, Four, and Five: using, brandishing, and discharging a firearm during and in relation to a crime of violence (Hobbs Act robbery and killing a witness) resulting in the deaths of Phillip Jackson, Brandon Cole, and Wendy Chaney, respectively, and aiding and abetting same, in violation of 18 U.S.C. § 924(c) and (j) and 18 U.S.C. § 2, against Coles, Dickerson, White, Adgebesan, Corbett, Buck, Preddy, and Jenkins-Armstrong;

- Count Six: conspiracy to use, brandish, and discharge a firearm during and in relation to a crime of violence (Hobbs Act robbery and killing a witness) resulting in the death of Chaney, in violation of 18 U.S.C. § 924(c), (j), and (o), against Coles, Dickerson, White, Adgebesan, Corbett, Buck, Preddy, and Jenkins-Armstrong;

- Count Seven: conspiracy to commit murder for hire in violation of 18 U.S.C. § 1958 and Pinkerton, against Coles, Dickerson, White, Adgebesan, Corbett, Buck, Preddy, and Jenkins-Armstrong;

- Counts Eight, Nine, and Ten: murder of witnesses (Chaney, Jackson, and Cole, respectively), and aiding and abetting same, in violation of 18 U.S.C. § 1512(a)(1)(C) and 18 U.S.C. § 2, against Coles, Dickerson, White, Adgebesan, Corbett, Buck, Preddy, and Jenkins-Armstrong;

- Count Eleven: conspiracy to murder witnesses (Chaney, Jackson, and Cole) in violation of 18 U.S.C. § 1512(k), against Coles, Dickerson, White, Adgebesan, Corbett, Buck, Preddy, and Jenkins-Armstrong;

- Count Twelve: conspiracy to distribute and possess with intent to distribute 1,000 grams and more of a mixture and substance containing a detectable amount of heroin, in violation of 21 U.S.C. § 846, against Adgebesan and Corbett;

- Count Thirteen: possession with intent to distribute heroin, and aiding and abetting same, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, against Adgebesan and Corbett;

- Count Fourteen: conspiracy to distribute and possess with intent to distribute at least 100 grams of a mixture and substance containing a detectable amount of heroin, and at least 28 grams of a mixture and substance containing a detectable amount of cocaine base and cocaine HCL, in violation of 21 U.S.C. § 846, against Coles and Dickerson;

- Counts Fifteen and Sixteen: possession with intent to distribute a mixture and substance containing a detectable amount of heroin, and a mixture and substance containing a detectable amount of both cocaine HCL and cocaine base, and aiding and abetting same, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, against Coles and Dickerson, respectively;

- Count Seventeen: possession with intent to distribute a mixture and substance containing a detectable amount of heroin and a mixture and substance containing a detectable amount of cocaine base, and aiding and abetting same, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, against Coles and Dickerson;

- Count Eighteen: distribution of a mixture and substance containing a detectable amount of heroin resulting in serious bodily injury, and aiding and abetting same, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2, against Coles and Dickerson;

- Count Nineteen: possession of firearms in furtherance of a drug-trafficking crime as alleged in Counts Fourteen through Eighteen, and aiding and abetting same, in violation of 18 U.S.C. § 924(c)(1), 18 U.S.C. § 2, and Pinkerton, against Coles and Dickerson;

- Count Twenty: conspiracy to murder a witness (codefendant Adgebesan) in violation of 18 U.S.C. § 1512(k), against Preddy, Jenkins-Armstrong, Lawson, and Armstrong;

- Count Twenty-One: attempted murder of a witness (codefendant Adgebesan) in violation of 18 U.S.C. § 1512(a)(1)(A) and (C), against Preddy, Jenkins-Armstrong, Lawson, and Armstrong; and

- Count Twenty-Two: accessory after the fact with respect to Hobbs Act robbery and murder, in violation of 18 U.S.C. § 3, against Lawson and Armstrong.

In the two years since the grand jury returned the third superseding indictment, other defendants have entered guilty pleas. In September 2020, Buck pled guilty to Count One of the indictment as well as to a one-count superseding information charging him under Section 924(c) with using and discharging a firearm during and in relation to a crime of violence. In February 2021, Corbett also pled guilty to Count One of the indictment and to a one-count Section 924(c) information. Next came Armstrong, who pled guilty in May 2021 to a one-count information charging him with witness tampering via intimidation or threats in violation of Section 1512(b)(1)-(3), followed by Jenkins-Armstrong who, like Buck and Corbett, pled guilty to Count One of the indictment and to a Section 924(c) information in June 2021. One month later, in July 2021, Lawson, like Armstrong, pled guilty to a one-count information charging a violation of Section 1512(b)(1)-(3). And just last month, Dickerson and Preddy both entered guilty pleas: Dickerson to Count Fourteen of the indictment, and Preddy to Count Twenty-One.

Three defendants now remain for trial: Coles, White, and Adgebesan. The case was initially set for a date-certain trial on January 10, 2022. However, after the government failed to make timely disclosure of certain discovery, Brady, Giglio, and Jencks Act materials, we were constrained to continue trial to April 11,

2022, to afford defense counsel adequate time to review and investigate the late-disclosed material.  Defendants have since filed more than a dozen pretrial motions *in limine* seeking to admit or exclude certain evidence.  In two of those motions, defendants request the alternative relief of severance for trial.  We ordered supplemental briefing limited to the issue of severance, which is now ripe for disposition.

## II.  **Discussion**

Joint trials "promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts."  United States v. Lore, 430 F.3d 190, 204-05 (3d Cir. 2005) (quoting United States v. Urban, 404 F.3d 754, 775 (3d Cir. 2005)).  As a result, a preference has developed in the federal system for joint trials of defendants indicted together.  See Zafiro v. United States, 506 U.S. 534, 537 (1993); Lore, 430 F.3d at 204-05 (citing Urban, 404 F.3d at 775).  Nonetheless, Federal Rule of Criminal Procedure 14 provides a mechanism for severance of properly joined defendants when joinder "appears to prejudice a defendant or the government."  See FED. R. CRIM. P. 14(a).  A court should sever defendants for trial "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  Zafiro, 506 U.S. at 539.

Severance is proper when a joint trial would work "clear and substantial prejudice" to the moving defendant.  See United States v. Avila, 610 F. Supp. 2d 391, 397 (M.D. Pa. 2009) (Conner, J.) (quoting United States v. Davis, 397 F.3d 173,

182 (3d Cir. 2005)).  The Supreme Court of the United States has identified several

scenarios in which such prejudice might be expected, explaining

> [s]uch a risk might occur when evidence that the jury
> should not consider against a defendant and that would
> not be admissible if a defendant were tried alone is
> admitted against a codefendant.  For example, evidence
> of a codefendant's wrongdoing in some circumstances
> erroneously could lead a jury to conclude that a defendant
> was guilty.  When many defendants are tried together in a
> complex case and they have markedly different degrees of
> culpability, this risk of prejudice is heightened.  Evidence
> that is probative of a defendant's guilt but technically
> admissible only against a codefendant also might present
> a risk of prejudice.  Conversely, a defendant might suffer
> prejudice if essential exculpatory evidence that would be
> available to a defendant tried alone were unavailable in a
> joint trial.

Zafiro, 506 U.S. at 539 (citing Kotteakos v. United States, 328 U.S. 750, 774-75

(1946); Bruton v. United States, 391 U.S. 123 (1968)).  Whether to grant a severance

is left to the sound discretion of the trial court.  See Lore, 430 F.3d at 205; United

States v. Sandini, 888 F.2d 300, 305 (3d Cir. 1989) (collecting cases).  In exercising

that discretion, we "balance[] the potential prejudice to the defendant against the

advantages of joinder in terms of judicial economy."  Sandini, 888 F.2d at 305 (citing

United States v. Sebetich, 775 F.2d 412, 427 (3d Cir. 1985)).  Importantly, even when

risk of prejudice is high, "less drastic measures, such as limiting instructions, often

will suffice to cure any risk of prejudice."  Zafiro, 506 U.S. at 539 (citing Richardson

v. Marsh, 481 U.S. 200, 211 (1987)).

### A.    Severance as to Adgebesan

The argument for severance as to Adgebesan turns primarily, although

not exclusively, on the admissibility *vel non* of proffer statements by codefendant

8

Corbett.  White and Coles seek to admit Corbett's statements at trial, arguing the statements are exculpatory as to them: Corbett apparently describes the offense as a robbery-gone-wrong, not a "hit," which corroborates White's defense, and does not mention White or Coles when naming his coconspirators.  (See, e.g., Doc. 1108 at 5-10).  They posit that, because Corbett has vacillated as to whether he will testify for the government and because he will invoke his Fifth Amendment privilege if called by any defendant, he is an "unavailable" witness for purposes of the hearsay rules, rendering his proffers admissible as statements against interest pursuant to Federal Rule of Evidence 804(b)(3).  (See id. at 10-17).  White and Coles further posit that, even if Rule 804(b)(3) does not apply, we should admit the statements under Rule 807's residual exception to the hearsay rule or, alternatively, on due process grounds pursuant to Chambers v. Mississippi, 410 U.S. 284, 302 (1973).  (See Doc. 1108 at 17-19).

For his part, Adgebesan asks the court to exclude Corbett's statements pursuant to Bruton v. United States, 391 U.S. 123 (1968).  Corbett's statements are highly inculpatory as to Adgebesan—Corbett claims that he spoke to Adgebesan after casing Jackson's farm, that Adgebesan "knew people who could get the job done," and that Adgebesan then recruited the Baltimore codefendants to commit the robbery.  (See Doc. 1108 at 5-10).  Adgebesan contends that to admit the proffer statements without an opportunity for him to cross-examine Corbett will violate his rights under the Confrontation Clause.  (See Doc. 1104 at 2-5).  White, Coles, and Adgebesan agree the solution to their conflicting motions is to sever Adgebesan's case for trial.  (See Doc. 1104 at 4-5; Doc. 1108 at 19-20).

9

The government rejoins all of this is a moot point because Corbett will now testify for the government at trial.  (<u>See</u> Doc. 1138 at 2).  In the government's view, Corbett's renewed commitment to honor his cooperation agreement and testify as a government witness makes him "available" to the defense for purposes of Rule 804 and <u>Bruton</u>.  (<u>See</u> <u>id.</u> at 2).  The government claims the possibility Corbett will not testify, or will invoke his Fifth Amendment privilege on cross-examination by the defense, is nothing more than "[r]ank speculation" that the court should not countenance.  (<u>See</u> Doc. 1164 at 6-7).

We reject outright the government's suggestion that defendants are merely speculating as to Corbett's potential unavailability at trial.  The instant motions were prompted by the government advising the defense on December 9, 2021, that Corbett would *not* be a trial witness.  (<u>See</u> Doc. 1103 ¶ 3; Doc. 1107 ¶ 5).  Corbett, through counsel, then filed a notice with the court in response to a defense trial subpoena explicitly stating: "[I]f called to testify at trial in this matter, Mr. Corbett intends to assert his Fifth Amendment Privilege and remain silent."  (<u>See</u> Doc. 1079).  The government represents in its initial brief that Corbett has since agreed to "testify if called by the United States."  (<u>See</u> Doc. 1138 at 2).  But subsequent conversations between Corbett's counsel and Adgebesan's counsel, and between

Corbett's counsel and government counsel, reveal that whether Corbett will testify is far from settled.[2] (See Doc. 1149 at 2-4).

Based on the parties' representations to date, it appears possible and even probable Corbett will be an unavailable witness to the defense at trial. (See Doc. 1079). Neither the government nor any defendant suggest Corbett's invocation of the Fifth Amendment in response to questions about his involvement in the instant offenses would be invalid.[3] Moreover, the government has not disputed White and Coles' arguments that application of the Fifth Amendment privilege will render Corbett "unavailable" for purposes of the hearsay rules, see FED. R. EVID. 804(a)(1); (see also Doc. 1108 at 10-11); that Corbett's three proffer statements, when made, had a "great . . . tendency . . . to expose [him] to civil or criminal liability," see FED. R. EVID. 804(b)(3)(A); (see also Doc. 1108 at 11-13 & n.5); and that each statement "is supported by corroborating circumstances that clearly indicate its trustworthiness,"

---

[2] We must emphasize that we express no criticism of Corbett here: the decision whether to testify or to invoke his Fifth Amendment privilege is Corbett's and Corbett's alone, and it is his prerogative to exercise or waive that right as he chooses. For this reason, we reject the request by Adgebesan's counsel that we elicit some sort of on-the-record assurance from Corbett's counsel as to whether Corbett will testify. We will not interfere in the attorney-client relationship in this way, particularly when forcing Corbett to later honor any such assurance would raise serious constitutional concerns.

[3] The government notes that the court has a remedy if Corbett properly invokes the Fifth Amendment on cross-examination: striking his direct testimony. (See Doc. 1164 at 6). That remedy, however, would bring us back to square one: White and Coles would seek admission of the proffer statements as statements against interest by a witness who had made himself unavailable, and Adgebesan would seek exclusion of those statements or, alternatively, severance.

see FED. R. EVID. 804(b)(3)(B); (see also Doc. 1108 at 13-17).[4]  The government

also has not opposed White and Coles' arguments that Corbett's statements are

admissible under both the residual hearsay exception, see FED. R. EVID. 807; (see

also Doc. 1108 at 17-18), and on due-process grounds, see Chambers, 410 U.S. at

302; (see also Doc. 1108 at 18-19).  Thus, the essential question before the court is

whether severance is necessary in light of Corbett's potential unavailability and

the probable admissibility of some or all of his proffer statements.

    We conclude severance is necessary with respect to Adgebesan.  The

Supreme Court of the United States held in Bruton that the Sixth Amendment's

Confrontation Clause bars use of the confession of a nontestifying defendant in a

joint trial if that confession inculpates another defendant.  See Bruton, 391 U.S. at

126, 137.  Corbett's proffer statements are plainly Bruton material as to Adgebesan,

and the government does not argue otherwise: it is clear from the parties' summary

of Corbett's proffers that, in the course of confessing, Corbett repeatedly implicates

Adgebesan.  (See Doc. 1108 at 5-10).  Although a court can remedy Bruton prejudice

---

[4] The government's only argument with respect to Rule 804(b)(3) is that
defendants overstate the rule's scope.  (See Doc. 1164 at 4-5).  The government
correctly notes that only those aspects of a confession "that are individually self-
inculpatory" are admissible under Rule 804(b)(3).  See Williamson v. United States,
512 U.S. 594, 599 (1994).  The most relevant statements for purposes of the instant
motions—Corbett's statements inculpating both himself and Adgebesan, and
Corbett's summary of his own role in the offense without mention of White and
Coles—plainly are self-inculpatory as to Corbett.  It is clear at least some aspects of
the statements, to include those aspects of most concern to the moving defendants,
would be admissible under Rule 804(b)(3), which is sufficient for purposes of our
severance analysis.  For purposes of the ultimate admissibility determination, we
will task counsel to submit the proffer statements to the court for the requisite
individualized, statement-by-statement analysis.

and avoid severance in some cases by redacting any reference to the defendant's existence and providing proper limiting instructions, see Richardson v. Marsh, 481 U.S. 200, 211 (1987), even a redacted statement will raise Confrontation Clause problems if the nature of the statement will lead the jury to presume the redacted reference is to the defendant, see, e.g., United States v. Hardwick, 544 F.3d 565, 573-74 (3d Cir. 2008) (discussing United States v. Richards, 241 F.3d 335 (3d Cir. 2001), and Priester v. Vaughn, 382 F.3d 394 (3d Cir. 2004)); see also United States v. Scott, No. 1:09-CR-072, 2009 WL 4269425, at *5 (M.D. Pa. Nov. 24, 2009) (Conner, J.) (citing Hardwick, 544 F.3d at 573-74).  Given the substance of Corbett's statement (that he and Adgebesan recruited the Baltimore defendants) and the government's theory of the case (that Corbett and Adgebesan together provide the crucial link between the Hagerstown and Baltimore defendants), we cannot conceive of a redaction or limiting instruction that would not simultaneously implicate Adgebesan.  In such circumstances, severance is required.  See Sandini, 888 F.2d at 310 (citing Bruton, 391 U.S. at 137); see also Zafiro, 506 U.S. at 539 (same).

We recognize, as the government argues, there is a scenario in which all of this may become a nonissue: if Corbett testifies as a government witness at trial, and if he fully and completely answers defense questions and does not invoke his Fifth Amendment right, Adgebesan's concerns may be moot.  But given Corbett's equivocation so far as to whether he will testify at all, and his preemptive invocation of the Fifth Amendment in response to a defense subpoena, all indications point to Corbett being unavailable to the defense, to some degree, at trial.  And while we appreciate the government's confidence that the court could simply address this

issue if it materializes at trial, we believe that view minimizes the disruption we would then face: if Corbett decides not to testify or invokes the Fifth Amendment at the time of trial, we would be constrained to grant a midtrial severance, inevitably prompting motions for a mistrial by some or all defendants.  Given the age of this case and the avoidable delays that have already frustrated its trial progress, we are disinclined to take that risk.  Accordingly, we will exercise our discretion and sever the case against Adgebesan for separate trial.

### B.     Severance as to Coles and White

White and Coles posit their cases also must be severed for separate trials. Their main concerns are (1) evidence admissible as to White but inadmissible as to Coles and (2) what they perceive to be as their mutually antagonistic defenses.  (See generally Docs. 1148, 1151).

We address the first issue raised in short order.  Coles has moved to exclude at trial certain evidence that White intends to use in his defense.  Coles first seeks to exclude as inadmissible hearsay a recorded prison phone call between Chaney and a person named Ronald Armstead that took place in the hour before Chaney was killed, in which Chaney expressed her belief Coles was going to kill her while insisting White could be trusted.  (See Docs. 1095, 1096; see also Doc. 1139 at 2-3; Doc. 1148 at 2; Doc. 1151 at 1-2).  Coles also seeks to exclude as an inadmissible prior bad act and on unfair-prejudice grounds evidence that, in the days prior to Chaney's murder, Coles angrily kicked in the door of Chaney's residence because she owed him money.  (See Docs. 1097, 1098; see also Doc. 1140 at 3).

We have reviewed the motions *in limine* and will issue separate rulings addressing the evidentiary issues in due course. As to the instant motions, we note that severance is not automatic even when evidence is admissible as to one defendant. See Zafiro, 506 U.S. at 539. Rather, our inquiry is always whether "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." See id. Assuming *arguendo* either or both pieces of evidence are inadmissible as to Coles but admissible as to White, we conclude appropriate limiting instructions will cure any risk of prejudice. See id.; see also United States v. Wilson, 960 F.3d 136, 147 (3d Cir. 2020) (noting courts "presume that the jury follows such [limiting] instructions . . . and regard such instructions as persuasive evidence that refusals to sever did not prejudice the defendant"). To the extent Coles and White are concerned other evidentiary matters may arise which impact upon them differently, we are likewise confident that well-crafted jury instructions will avoid prejudice to either defendant.

White and Coles also contend that severance is necessary because they will present mutually antagonistic defenses at trial. (See Doc. 1148 at 3-5; Doc. 1151 at 1-3). White intends to argue that Coles had motive to kill Chaney based on a falling out between the pair in the weeks before her murder. (See Doc. 1148 at 4). Coles will suggest to the jury that White may have had a motive as to Jackson, based on a souring of their relationship and "multiple, intense arguments over money owed" in the time leading up to the triple homicide. (See Doc. 1151 at 1). We disagree with

the defendants that these defenses are in such tension as to require the "strong medicine" of severance.  See Wilson, 960 F.3d at 147.

Our court of appeals has explained defenses are mutually antagonistic "when acquittal of one codefendant would necessarily call for the conviction of the other."  See United States v. Voigt, 89 F.3d 1050, 1094 (3d Cir. 1996) (citation omitted).  This situation arises when one defendant's "claim of innocence is predicated solely on the guilt of a co-defendant."  See id. (citation omitted).  Cases in which defenses are so incompatible as to necessitate severance are rare.  See id. (citing Zafiro, 506 U.S. at 538).  The question we must ask in evaluating the need for severance is whether the jury "could reasonably construct a sequence of events that accommodates the essence of [both defendants'] defenses."  Id. (citation omitted). Importantly, mere "finger-pointing and blame-shifting among coconspirators" will not alone support a finding of mutually antagonistic defenses warranting severance. See id. at 1095 (collecting cases).

Coles cites a number of extra-circuit cases to support his view that his and White's defenses will so undermine the other that severance is required.  (See Doc. 1151 at 2 (collecting cases)).  The cited decisions illustrate defenses that are truly antagonistic.  Take United States v. Gonzalez, 804 F.2d 691 (11th Cir. 1986), for example.  There, Anselmo Lopez and Gilberto Gonzalez were arrested when Coast Guard officers found cocaine on a small cabin cruiser being towed by a large freighter; Lopez was on board the cruiser, and Gonzalez was on the freighter.  See id. at 692-93.  At trial, Lopez testified that Gonzalez owned the cruiser, that he had seen Gonzalez tear up the boat's registration and throw it in the water, and that

Gonzalez had hidden the boat's key in the wall of their jail cell.  See id. at 693-94.

Gonzalez testified, *inter alia*, that someone else owned the cruiser, that he never

tore up the registration or hid the key, and that Lopez had warned Gonzalez while

in pretrial detention that he would implicate Gonzalez.  See id. at 694.  The court

concluded these defenses "were irreconcilable and mutually exclusive," because for

the jury to credit Lopez's testimony that Gonzalez had the key and had control of

the boat, it necessarily had to disbelieve Gonzalez; there was no scenario in which

the jury could accept both defenses.  See id. at 695.

Likewise, in United States v. Crawford, 581 F.2d 489 (5th Cir. 1978), Gregory

Larmar Crawford and Kenneth Ray Blanks were charged with possession of the

same unregistered, sawed-off shotgun.  See id. at 490.  Blanks testified at trial that

Crawford owned the firearm, and he presented witnesses corroborating that

testimony.  See id.  Crawford testified to the opposite: he claimed Blanks owned the

gun and denied having seen it before the night of their arrest.  See id.  The court

held severance to be warranted, finding the defenses to be "irreconcilable as well as

mutually exclusive," since "[t]he sole defense of each [defendant] was the guilt of

the other."  See id. at 491-92.

Those examples stand in stark contrast to the case *sub judice*.  White and

Coles are engaged in nothing more than "finger-pointing and blame-shifting," see

Voigt, 89 F.3d at 1095, each intending to tell the jury that the other had a stronger

motive to commit the charged offenses.  These defenses are not mutually exclusive.

That is, the jury will not be forced to choose among the two defenses; to reject one

defense would not require the jury to accept the other.  Indeed, the jury could easily

17

accept *both* defenses—finding Coles and White *each* had motive as to the charged offenses—and still acquit both defendants if the government does not prove to the jury's satisfaction that the defendants *acted* on that motive.  We hold that severance is not warranted on this ground.[5]

Finally, we note Coles also requests a severance on scheduling grounds, citing personal and professional conflicts with the current trial date of April 11, 2022, and a need for more time to prepare for trial.  (See Doc. 1151 at 3).  The court declines to sever trial on this basis.  We will convene a telephonic conference with counsel for Coles, White, and the government forthwith to discuss scheduling matters.

---

[5] Coles also cites United States v. Odom, 888 F.2d 1014 (4th Cir. 1989), in support of severance.  In Odom, the court concluded that midtrial severance of two alleged coconspirators was warranted when it became clear that one attorney's strategy "was to bring out any information that was detrimental and prejudicial to [the codefendant] without regard to whether such information was relevant to the charges contained in the indictment."  See Odom, 888 F.2d at 1018.  The court determined that the codefendant's "attack" of his defendant "was so unrelenting and prejudicial" that the defendant could not have received a fair trial before the same jury.  See id.  This case is distinguishable from Odom, both in the nature of the defense raised (neither Coles nor White intend to paint the other as a "kingpin" to whom they were an "underling") and because here, the evidence that White seeks to introduce is squarely relevant to the charges in the indictment; indeed, the government has indicated it intends to introduce much of the same evidence.

**III.**   **Conclusion**

      The court will grant in part and deny in part defendants' requests to sever.

An appropriate order shall issue.


                           /S/ CHRISTOPHER C. CONNER
                           Christopher C. Conner
                           United States District Judge
                           Middle District of Pennsylvania


Dated:     January 25, 2022