# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 1:16-CR-212 |
| | : | |
| v. | : | (Judge Conner) |
| | : | |
| KEVIN COLES | : | (Electronically Filed) |

## KEVIN COLES' SENTENCING MEMORANDUM

### I. Introduction

Coles is scheduled for sentencing on December 12, 2022. Coles was convicted of four counts that carry a mandatory life sentence: Counts 7 – 11. Coles was also convicted of Counts 14 and 18 which purport to carry a mandatory life sentence based on 21 U.S.C. § 851, but Coles disputes whether that section is applicable. (Docs. 1304, 1327.) The Court previously overruled Coles' objection. (Apr. 12 N.T. p. 92: 22 – 93:8.) Coles renews this objection below based on a recent decision from the U.S. District Court for the Eastern District of New York.

Coles submits the instant Sentencing Memorandum conscious that the case, as presently postured, carries a mandatory life sentence.

### II. Calculation of the Guidelines Range

Counts 1 through 11 all relate to the robbery and murders of Philip Jackson, Wendy Chaney, and Brandon Cole that were performed by Christopher Johnson and his affiliates in the Black Guerilla Family ("BGF") on June 25, 2016. Counts

1

14, 15, 17, 18, and 19 relate to an alleged drug conspiracy of Kevin Coles and Devin Dickerson.

The Presentence Report ("PSR") computes Coles' 16 counts into 4 groups for the purpose of sentencing. (Doc. 1450 at ¶ 28 – 63.) The PSR calculates Coles' total offense level as a **43** and his criminal history category as **V**. (Id. at ¶ 63, 72.) The PSR concludes that Coles' guideline imprisonment range is **life**. (Id. at ¶ 79.)

### A. Objections to the PSR[1]

Coles objects to the Guidelines calculation in the PSR as follows:

#### 1. PSR ¶ 69 is part of the offense conduct

PSR ¶ 69 refers to Coles' conviction for possessing heroin when he was arrested in this case. That heroin was part of Counts 14 and 15 of the Third Superseding Indictment and is included the Government's drug weight calculation. This conviction should be excluded pursuant to USSG § 4A1.2(a)(1).

---

[1] Coles continues to dispute the facts alleged by the Government. Throughout most of the PSR the factual allegations are qualified with phrases similar to a "witness testified to x" or "the Government presented evidence of y." Coles objects to the factual allegations in the PSR and specifically objects to Paragraphs 15, 17, 19, 20, 21, and 23 to the extent they contain no such qualifiers and also include legal conclusions such as "beyond a reasonable doubt."

2

## 2. Leadership role for the robbery and murder offenses

Coles objects to the 4-level leadership role enhancements pursuant to USSG § 3B1.1 included in the PSR for the Group 1, Group 2, and Group 3 offenses (robbery and murder offenses). (Doc. 1450 at ¶ 36, 42, 48.) Application Note 4 of USSG § 3B1.1 states:

> Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

All of these factors weigh against Coles being an organizer/leader:

- Decision making authority: All codefendant witnesses that testified at trial, testified that Coles was not present at the "planning meeting" prior to the robbery and murders. No evidence was presented that Coles exercised decision making for how the robbery and murders occurred, who would be involved, or how they would do it. Coles did not participate in the commission of the robbery/murders.

- Nature of participation: The evidence was that Coles was not present for or a participant in the robbery/murders.

- Recruitment of accomplices: The evidence at trial was that Kenyatta Corbett recruited the BGF, not Coles. Johnson testified that he never communicated with and did not know Coles.

- Larger share of proceeds: No evidence was produced that Coles had a claimed right to a larger share of the fruits of the crime. In fact, the testimony was consistent that any proceeds from the robbery/murders would have been shared only with BGF members (all of whom did not even know Coles).

- Planning or organizing offense: Michael Buck testified that the planning and organizing of the robbery and murders was performed by himself (Buck) and Kenyatta Corbett on the day the robbery and murders took place. Buck testified that Coles was not present, that he does not know Coles and that Coles was not involved in the planning meeting or the execution of the robbery/murders.

- Scope of the illegal activity: The evidence at trial was that the murders were hastily arranged. Buck and Corbett discussed it while driving, went to the Farm to perform reconnaissance, drove to Baltimore, recruited the BGF, went to Buck's house, and then went to the Farm. Everything happened in one day and without Coles' participation.

- Control and authority exercised over others: There is no evidence that Coles exercised any authority over others. Johnson did not know Coles. Coles did not direct him how to perform the robbery/murders or supply him with any equipment or transportation. Coles is not even alleged to be a member of the BGF, let alone a sufficiently high-ranking member to have control or authority over anyone in that organization.

The United States Probation Office states in the Addendum to the Presentence Report that Coles "put the hit out on Chaney," and "hired people to murder Chaney." (Doc. 1451 at p. 2.) Coles continues to dispute these facts, but even if they are true, they would not establish organizer/leader. Application Note 4 to USSG § 3B1.1 states, "This adjustment does not apply to a defendant who merely suggests committing the offense." According to the Government's claims that is what Coles did.

It is unclear how Coles could have organized or led people he did not know who planned the crime at a meeting he did not attend at an operation where he was not present. The leadership role should not be applied to this Group.

### 3. Leadership role for the drug conspiracy offenses

Coles objects to the 4-level leadership role enhancement pursuant to USSG § 3B1.1 included in the PSR for the Group 4 offenses (drug conspiracy offenses).

5

(Doc. 1450 at ¶ 54.) Coles position is that he was not an organizer, leader, manager, or supervisor in a criminal activity that included five (5) or more participants or was otherwise extensive. The testimony produced at trial was consistent that Coles and Dickerson were equals and the only two consistent individuals involved in their drug conspiracy. In the Addendum to the Presentence Report, the United States Probation Office "disagrees that [Coles and Dickerson] were the only participants . . . [and that] [m]ultiple people testified that they sold drugs on behalf of Coles and Dickerson." (Doc. 1451 at 2.)

"[S]ection 3B1.1 applies to situations where an individual is a leader or organizer of individuals who participate *together* in committing one or more criminal acts." United States v. Belletiere, 971 F.2d 961, 969 (3d Cir. 1992). The Third Circuit in Belletiere further stated:

> Where an individual is convicted of a series of solitary, non-related crimes, such as a series of drug sales by one drug seller to various buyers, and there is no "organization" or "scheme" between the drug seller and buyers, or between the buyers themselves, that the defendant could be said to have "led" or "organized," section 3B1.1 cannot apply.

Id. at 970. In Belletiere, the Third Circuit held that while the defendant was a drug dealer selling drugs to multiple groups of individual buyers; but were there was no direct connection between the buyers themselves, "it was improper for the district

court to treat these two groups of individuals as 'participants' in the same criminal activity or offense under section 3B1.1." Id. at 972.

Coles acknowledges that multiple individuals testified at trial that they purchased drugs from Coles and/or Dickerson; however, there was not a sufficient link between the groups of buyers to establish that Coles was an organizer or leader of a criminal activity that consisted or five (5) or more individuals or was otherwise extensive.

### 4. § 851 enhancement

Coles objects that Counts 14 and 18 carry a mandatory term of life imprisonment pursuant to 21 U.S.C. § 851 as indicated in the PSR. (Doc. 1450 at ¶ 77.) The penalty for Count 14 should be reduced to 5 to 40 years and the penalty for Count 18 should be 20 years to life. (See Addendum to the Presentence Report, Doc. 1451, at 3.) On April 4, 2022, the Government filed an Information to Establish Prior Conviction Pursuant to 21 U.S.C. § 851 seeking to increase the penalties for Counts 14 and 18. (Doc. 1292.) To support the increase in potential punishment the Government stated in its notice: "[a]t the time of these offenses, the defendant had a felony drug conviction in the New York County Supreme Court, No. 07816-2002, for the offense of Criminal Sale of Controlled Substance – 3rd Narcotic Drug, N.Y. Penal Law §220.39(1)." (Doc. 1292 at 2.)

7

However, Coles' prior New York conviction for the Criminal Sale of Controlled Substance, N.Y. Penal Law § 220.39(1), does not qualify as a prior serious drug felony offense applying federal law.  United States v. Holmes, 21-CR-147, 2022 WL 1036631 (E.D.N.Y. April 6, 2022).  In Holmes, the court found that the same New York statute that Coles was convicted under criminalized certain "isomers" of cocaine that the federal Controlled Substance Act ("CSA") does not. Id. at *7.  "As a result of the difference in the definitions of cocaine under New York law and federal law, possession of certain cocaine isomers is illegal under the New York statute but legal under the CSA." Id. at *9.   The court in Holmes ultimately determined that because of the categorical mismatch in the definitions of what constitutes a "narcotic drug" in New York and a "controlled substance" under the CSA, that Holmes prior New York state conviction could not be held against him as a prior offense in a subsequent federal proceeding.  See also United States v. Guzman, 1:19-cr-435-GHW, 2022 U.S. Dist. LEXIS 209043 at *15 (S.D.N.Y. Nov. 17, 2022) (citing Holmes with approval).

The United States Probation Office indicates in the Addendum to the Presentence Report that the "probation officer agrees with the findings of the [district court in Holmes] . . . [h]owever, neither this Court nor the Third Circuit have addressed this specific issue; therefore, under current law, New York's criminal sale of cocaine is a qualifying conviction for purposes of 21 U.S.C. §

851." (Doc. 1451 at 3.) The Eastern District of New York is in the best position to evaluate whether New York's law is a categorical match. The Holmes court accurately determined that a conviction of NY PL § 220.39(1) does not qualify as a prior conviction in federal court pursuant to 21 U.S.C. § 851. Respectfully, this Court should adopt the Eastern District of New York's analysis of NY PL § 220.39(1).

Coles' objection should be sustained.

### 5. Serious bodily injury

Coles objects to PSR ¶ 51 applying higher base offense level for serious bodily injury and a prior conviction. Coles concedes that the serious bodily injury argument has already been litigated in this case and makes the objection here for preservation purposes.

With respect to the prior conviction issue, Coles incorporates his argument under Part II.A.4. above as to why his prior conviction is not an appropriate predicate offense.

## III. Sentence Pursuant to 18 U.S.C. § 3553(a)

Given that there is a statutory life sentence, Coles reserves his § 3553(a) arguments pending resolution of the above and the post-trial motions.

## IV. Conclusion

For the above-stated reasons, Coles respectfully requests that his objections to the PSR be sustained.

Respectfully submitted,

Date: November 21, 2022

*/s/ M. Jason Asbell*
**M. Jason Asbell**
2933 Lititz Pike
P.O. Box 5349
Lancaster, PA 17606
PH: (717) 291- 1700 / FAX: (717) 291-5547
Email: *jasbell@gkh.com*
Attorney for Defendant


/s/ Christopher Opiel
**Christopher Opiel, Esq.**
**CJA Appointed Counsel**
**Attorney ID# PA318776**
Opiel Law
88 North Franklin Street
Wilkes-Barre, Pennsylvania 18701
(570) 762-9992 (Office)
(570) 417-1436 (Cell)
(570) 825-6675 (Fax)
Email: cropiel@opiellaw.com

# CERTIFICATE OF SERVICE

I, Christopher Opiel, CJA appointed counsel, do hereby certify that this document, the foregoing **Defendant's Sentencing Memorandum**, filed electronically through the ECF system will be sent to the registered Participants as identified on the Notice of Electronic Filing, including the following:

>William A. Behe, Esquire
>Assistant United States Attorney
>
>Crystal J. Bard
>United States Probation Officer

Date: November 21, 2022        /s/ Christopher Opiel
                                                    **Christopher Opiel, Esq.**